**GRINDSTAFF v. MATHER.**

No. 5656.

Court of Civil Appeals of Texas.  Amarillo.
Feb. 26, 1945.

Rehearing Denied April 2, 1945.

Benjamin Kucera, of Lubbock, for appellant.

Crenshaw, Dupree & Milam, of Lubbock, for appellee.

STOKES, Justice.

On January 6, 1943, the appellee, John T. Mather, and the appellant, R. B. Grindstaff, entered into a written contract for the sale by appellee to appellant of six labors of Stonewall County school land located in Cochran County, comprising slightly in excess of 1000 acres. No cash payment was required but the contract provided that appellant should take immediate possession of the land, grub and break 465 acres of new land, prepare for planting 235 acres already in a state of cultivation, and plant the entire seven hundred acres principally to cotton, the portion not planted to cotton to be planted in grain sorghums. The crops were to be planted and harvested in due season, sold to the best advantage, and the proceeds, less the reasonable expense of harvesting, threshing, and transporting the products to the market, were to be applied, first, to the payment of interest at five per cent per annum on the purchase price of approximately $25,000, secondly, to payment of the taxes for the current year, and the remainder to be applied on the purchase price. Appellant further agreed to place on the land a windmill and pump and further to improve the premises to the best of his ability. It was further provided that after applying the proceeds of the crops to the purchase price, appellant would make application for a loan to the extent of fifteen dollars per acre and apply the proceeds of the loan to the purchase price. Appellee agreed that after the purchase price had been reduced by the proceeds of the crops and the loan, he would execute a deed conveying the land to appellant and take appellant's notes, secured by a vendor's lien and deed of trust lien, for the unpaid balance. The contract further provided that, in the event appellant failed to comply with its terms, the contract should become null and void and of no further force and effect, and all labor, material, crops, and improvements placed on the land by the appellant should be held by the appellee as damages for breach of the contract or, in the alternative, appellee should have the option of enforcing specific performance.

Appellee instituted this suit on January 13, 1944, by filing his petition, which consisted of two counts, the first count being in the statutory form of trespass to try title, and in the second count he alleged fully the terms of the contract, attached a copy thereof to his petition, alleged that appellant had failed to comply with its terms in five material particulars, and prayed for recovery of the title and possession of the land, for damages in the sum of $10,000, and for judgment canceling and terminating the contract and all rights of the appellant that had accrued by virtue thereof.

Appellant filed an answer in which he urged a special exception to that portion of the petition in which appellee sought to recover the improvements placed on the land by appellant, upon the ground that appellee had brought the suit to avoid and cancel the contract and that under the law he could not cancel the contract and at the same time recover the improvements by virtue of its terms and provisions. He alleged that he had been attempting to comply with the contract but that he was prevented from grubbing and plowing a large partion of the new land because of drought conditions which prevailed in Cochran County and a fire which spread over a large portion of the land, destroying the grass and moisture therein, leaving it in such condition that it could not be plowed or cultivated. He alleged that he was not able to plant any of the land in cotton as required by the contract but that he broke as much of it as possible under the drought conditions and planted feed crops on 387 acres, and that his failure to plant the entire 700 acres or to plant any cotton was due. to conditions beyond his control. He further alleged that he had placed permanent improvements on the land of the value of $1200 and that the improvements had increased the value of the land to the extent of $4,000. He further alleged that since December 20, 1943, he had expended $1750 in plowing the land and placing it in a state of cultivation and thereby further enhanced its value to that extent, by virtue of all of which he prayed that appellee take nothing by his suit but that in the event judgment was rendered in appellee's favor for possession, appellant recover of appellee the value of the improvements placed on the land by him, which he alleged to be $4,000, and also the $1750 which he had expended in breaking the land and placing it in a state of cultivation for the year 1944.

The court overruled appellant's special exception to the allegations of the appellee seeking to recover the improvements placed upon the land by the appellant, and sustained appellee's special exceptions to the allegations of appellant that he had attempted to carry out the provisions of the contract but was prevented from doing so by the weather conditions and the result of the grass fire. The court also sustained the appellee's exceptions to the allegations under which appellant sought to recover $1750 for breaking the land and putting it in a state of cultivation for the following year, and also his prayer in which he sought to recover of appellee that sum, together with the sum of $4000, the alleged increase in the value of the land by virtue of the work and improvements he had placed thereon.

The court submitted the case to a jury upon special issues, in answer to which the jury made findings concerning the value of the improvements, the rental value of the cultivated land and of that portion which was not in cultivation, the amount which the new land would have been increased if the appellant had grubbed the same and placed it in a state of cultivation, and the amount which the land had increased in value by reason of the improvements. After the verdict was returned, the court granted the motion of appellee and rendered judgment in his favor non obstante veredicto for the improvements and possession of the land, to which the appellant duly excepted, gave notice of appeal, and he has perfected an appeal to this Court.

Appellant contends the judgment should be reversed because the court erred in overruling his special exception to that portion of appellee's petition wherein the appellee sought to cancel and terminate the contract and also to recover the improvements placed upon the land by the appellant. He also contends that the court erred in sustaining the appellee's special exceptions to that portion of appellant's answer wherein he alleged, and sought to recover, the value of the improvements placed upon the land by him during the year 1943. He also assigns error of the trial court in rendering judgment in favor of the appellee for the title and possession of the land and the improvements placed thereon by appellant. These assignments present the general proposition that the appellee was not entitled to recover the improvements placed upon the land by the appellant, because appellant had placed them on the premises under the terms of the contract, and appellee was not entitled to have the contract canceled and terminated and at the same time recover the improvements by virtue of its terms and provisions. In support of his contention, appellant argues that the effect of appellee's allegations and the judgment of the court was to rescind the contract of sale, and he cites a number of cases wherein the courts have held that a rescission will be denied unless the party seeking it restores, or offers to restore, the consideration which he has received under the contract. The cases cited in support of this contention are the case of Hausler v. Harding-Gill Co., Tex.Com.App., 15 S.W.2d 548, and other cases of like import.

We do not agree with appellant in this contention. The contract plainly provided that if appellant should fail to comply with its terms, and furnish the labor and material, or to grub, break, and plant the land as therein provided, the contract should become null and void and of no further force or effect, and that all of the improvements should be held by the appellee as damages for such breach. The undisputed testimony showed that appellant failed to comply with the contract in a number of particulars. Instead of grubbing and breaking 465 acres of new land, as provided by the contract, appellant grubbed and broke only 54.6 acres. Instead of planting 700 acres principally to cotton, he did not plant any cotton whatsoever. Instead of planting the crops in due time and season, as contemplated by the contract, he failed to plant in due time and season even the feed crops and instead of delivering to appellee the proceeds of the crops he produced, as provided by the contract, he did not pay any portion of such proceeds to the appellee; and instead of procuring the loan on the land and applying the proceeds of such loan to the purchase price, he did not even make application for a loan of any kind. All of this was not only shown by the undisputed testimony, but was admitted by the appellant. There is no doubt that under the rules of equity appellee had the right to rescind the contract because of its breach by the appellant, but he was not confined to that remedy. The rule of law is well settled in this State, as well as every other State in the Union, that when a vendee breaches the covenants of a contract which contains

provisions entitling the vendor to declare a forfeiture on account of such breach, the taking advantage of, and declaring upon, such forfeiture does not constitute a rescission of the contract. Rescission is basically an equitable remedy and terminates the contract by a method not necessarily authorized by the agreement. It extinguishes the contract despite its provisions, which may contemplate a totally different result, while a forfeiture declared upon pursuant to the terms of the contract executes the agreement as effectually as performance itself. It is an assertion of a right granted by the contract. Forfeiture means a loss in consequence of the breach of the contract or the neglect of a duty which a party has contracted to perform. United States v. Chavez, 10 Cir., 87 F.2d 16; State v. Compton, 142 Tex. 494, 179 S.W.2d 501; Meyers v. State, 47 Tex. Civ.App. 336, 105 S.W. 48; State v. De Gress, 72 Tex. 242, 11 S.W. 1029.

Justice Taft drew a clear and definite distinction between the technical rescission of a contract and its annulment, termination, or abandonment by virtue of its terms. In the case of Hayes v. City of Nashville, 6 Cir., 80 F. 641, 645, he said:

"It is well settled that a technical rescission of the contract has the legal effect of entitling each of the parties to be restored to the condition in which he was before the contract was made, so far as that is possible, and that no rights accrue to either by force of the terms of the contract. But, besides technical rescission, there is a mode of abandoning a contract as a live and enforceable obligation, which still entitles the party declaring its abandonment to look to the contract to determine the compensation he may be entitled to under its terms for the breach which gave him the right of abandonment."

■■ It has been held in many cases that parties to a contract may agree upon the remedies that shall accrue in case of its breach, and the contract involved in this case clearly provides that its breach by the appellant should result in the forfeiture by him of the improvements which he placed upon the land, together with the labor expended by him in grubbing the 54.6 acres and plowing that which was already in a state of cultivation. Magnolia Provision Co. v. Coleman, Tex.Com.App., 3 S.W.2d 412; Stennick v. J. K. Lumber Co., 85 Or. 444, 161 P. 97, 166 P. 951;

Holland v. Bradley, 140 Or. 258, 12 P.2d 1100.

■■ It is true, as asserted by appellant, that the courts do not favor forfeitures but when the parties to a contract write into it the provision that in consequence of its breach a forfeiture shall result, the courts have no alternative but to enforce the contract as made by them. In our opinion, the acts and conduct of the appellee concerning the breach of the contract and his suit as revealed by his pleadings constituted a suit for the breach of the contract and for recovery of the rights accruing to him under it, and not a rescission of the contract, as contended by appellant, and appellant's contention to the contrary will be overruled.

■ The next contention presented by appellant is that the court erred in rendering judgment in favor of the appellee notwithstanding the fact that the jury failed to make findings on Special Issues Nos. 9, 10, and 11 submitted to them in the court's charge. Those special issues had reference to the failure of appellee to remove and place upon the north line of a portion of the land a fence that was located a short distance south of the north line. The jury was asked if the failure to remove the fence was due to the fault of the appellee and if it interfered with the appellant in carrying out his contract. We find no error revealed by this assignment. The written contract made no reference to the fence. It provided that appellant should take immediate possession of all of the land, and the testimony showed he did take possession of it a short time after the contract was executed. Appellant admitted in his testimony that there were two gates in the fence and that he took possession of the land north of the fence and plowed a portion of it. There was no testimony to the effect that the fence interfered with appellant's possession of any portion of the land. On the contrary, appellant testified that his failure to finish plowing that portion lying north of the fence was due to the drought. He testified that at the time the written contract was executed the agent of the appellee who negotiated the sale agreed that appellee would move the fence and that later appellant agreed with appellee that he would furnish a man to assist in removing it. According to the testimony, moving the fence was but an incidental matter of small im-

port that entered into the discussions before, at the time, or shortly after the contract was executed. Furthermore, the fence did not prevent the appellant from taking possession of any portion of the land and, since this was shown by the undisputed testimony, the question of whether the failure of the appellee to move it interfered with the appellant's possession was not at issue and therefore not a proper question for submission to the jury.

 The last contention presented by appellant has reference to an engine belonging to him and which had been loaned by him to appellee. Appellee alleged, and the evidence showed without dispute, that he did not claim the engine but that he was willing to deliver it back to appellant at any time appellant called for it. In his supplemental petition he tendered the engine to appellant and offered to deliver it to him at any place appellant might designate. Appellant did not take advantage of the tender and we find no error in the refusal of the court to render judgment in his favor for the value of the engine.

We have considered all of the assignments of error and contentions presented by appellant and, in our opinion, no reversible error is revealed by any of them. The judgment of the court below will therefore be affirmed.